UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALFRED ALEXANDER, ET AL.                          CIVIL ACTION

VERSUS                                            NO. 14-1273

KEVIN GROS CONSULTING AND MARINE                  SECTION "L" (1)
SERVICES, INC., ET AL.

ORDER & REASONS

Before the Court is Defendant EnVen Energy Ventures, LLC's ("EnVen") Motion for

Summary Judgment.  R. Doc. 42.  Having reviewed the parties' briefs and the applicable law, the

Court now issues this Order & Reasons.

I.      BACKGROUND

This case arises out of an incident which occurred on October 12, 2012, on a fixed

offshore oil platform ("MP-277A") located in the Gulf of Mexico on the Outer Continental Shelf

off the coast of Louisiana.  R. Doc. 42-2 at 1.  The platform was owned by EnVen Energy

Ventures, LLC (EnVen).  EnVen hired Global Offshore Services, Inc. ("Shaw") to perform

maintenance and repair work on the platform following Hurricane Isaac.  R. Doc. 42-2 at 2.  The

Plaintiff, Alfred Alexander, was employed by Shaw to assist in the work.  R. Doc. 42-2 at 1.

Alexander and other employees of Shaw were quartered on the M/V Gina B ("GINA B"), a

vessel chartered by EnVen, because the platform was an unmanned platform and did not have a

living quarters on it.  At the time of the incident giving rise to this lawsuit, the plaintiff claims

that as part of his duties he was ordered to assist in the transfer of pipe from the MP-277A to an

iron scrap basket on the GINA B.  R. Doc. 42-2 at 1.  During this transfer, a large swell allegedly

struck the GINA B., causing the pipe to swing out of control and injure Alexander.

Alfred and Catherine Alexander filed an action against defendants, who include marine

contractors and subcontractors, on May 7, 2014, in the 17th Judicial District of Louisiana.  R.

Doc. 1-1.  Alfred Alexander filed this action "individually and on behalf of his minor children

W. Alexander and W.A. Alexander."  R. Doc. 1-1 at 4.  The Complaint makes various

allegations against different defendants, including, *inter alia*, that: EnVen Energy Ventures, LLC

("EnVen") negligently monitored its contractors and/or employees; JHC Marine, LLC ("JHC")

allowed its contractors to disregard certain rules and regulations; and Kevin Gros Offshore, LLC

("KGO") negligently conducted a loading procedure in rough seas.  R. Doc. 1-1 at 5, 6.

## II.    PRESENT MOTION

Defendant EnVen filed the present motion.  R. Doc. 42.  EnVen asks this Court to grant

summary judgment as to Alexander's claims against EnVen, and dismiss Alexander's claims

with prejudice.  R. Doc. 42-1 at 1.

### a.  EnVen's Motion to Dismiss

EnVen's Motion to Dismiss argues that EnVen lacked operational control over the MP-

277A and the GINA B by providing a detailed account of Enven's actual and contractual

relationship with the day-to-day activities of the independent contractors repairing the MP-277A.

R. Doc. 42-1 at 2–12.

EnVen places great weight on the absence of any EnVen employees aboard the MP-277A

or the GINA B.  R. Doc. 42-1 at 4.  EnVen contracted with three separate entities to repair the

MP-277A.  The first entity, Shaw, employed Alexander.  Shaw's supervisor was Mr. Shelton,

who was also employed by Shaw.  R. Doc. 42-2 at 4.  EnVen also contracted with Chapman

Consulting ("Chapman").  R. Doc. 42-2 at 4.  Bryan Lee was Chapman's sole employee on this

job site.  Lee served as the job site supervisor/consultant for the repair project.  Lee claims that

his responsibilities included tracking the costs of the repair project and supervising the work of

the Shaw crew.  R. Doc. 42-2 at 3.  But Lee denies having control over the scope of the work of Shaw.  R. Doc. 42-2 at 3.  Lastly, Kevin Gros Consulting and Marine Services, Inc.'s ("Kevin Gros") owned the GINA B, and provided EnVen with vessel charter services in connection with the MP-277A on the day of the accident.  R. Doc. 42-2 at 3.  Kevin Gros provided the services of the GINA B and a crew to man the GINA B.  Captain James Godwin was the captain of the M/V Gina B on the day in question.  R. Doc. 42-2 at 5.  Aside from the employees of Shaw, Chapman, and Kevin Gros, no other EnVen contractors or employees were on or aboard the MP-277A or the GINA B at the time of Alexander's accident.  R. Doc. 42-2 at 3.

The Master Service Agreements and Master Time Charter Agreement characterize the employees of Shaw, Chapman, and Kevin Gros as independent contractors outside of EnVen's control.  R. Doc. 42-2 at 2.  EnVen claims that these contractors had sole control over the step-by-step processes of repairing the MP-277A and directing activities aboard the GINA B.  R. Doc. 42-2 at 4–5.  EnVen contends that the presence of these contractors obviated the need for EnVen to control the step-by-step processes of the repair work aboard the MP-277A.

EnVen provides deposition testimony of its independent contractors which indicates that EnVen lacked operational control of the activities that led to Alexander's injury.  Mr. Shelton, Alexander's direct supervisor, testified that he was "in charge of the crew" and responsible for compliance with proper job safety analysis (JSA) procedures.  R. Doc. 42-7 at 2.  Mr. Lee, the job site supervisor/consultant on the MP-277A, testified that he "[oversaw] the third party independent contractor perform the work . . ., making sure the work scope, which was developed by Shaw . . . was being performed."  R. Doc. 42-8 at 3.  Captain James Godwin, captain of the GINA B for Kevin Gros, testified that EnVen gave no step-by-step directions as to how to perform his duties.  R. Doc. 42-4 at 2.  Alexander conceded that Mr. Shelton was his only

supervisor, and that no one outside of the Shaw crew was involved in the pipe transfer operation at issue.  R. Doc. 42-5 at 2–3.  EnVen contends that these statements support a finding that only the parties aboard the MP-277A and the GINA B were responsible for the pipe transfer operation, and that EnVen lacked actual control over anyone who could be characterized as a supervisor aboard the MP-277A or the GINA B.

EnVen provides evidence that it contractually ceded operational control over operations aboard the MP-277A and the GINA B, and argues that EnVen therefore could not have caused the accident at issue.  R. Doc. 42-1 at 12–14.  The Master Service Agreements between EnVen and its independent contractors contain identical provisions establishing the responsibility of the independent contractor for the manner and method of work aboard the MP-277A.  "[EnVen] shall have no direction or control of the details of the work, the Contractor, or its employees and agents except in the results obtained."  R. Doc. 42-6 at 4; R. Doc. 42-9 at 5.  The Master Time Charter Agreement between EnVen and Laborde Marine Management, LLC, ("Laborde"), the vessel broker that chartered Kevin Gros and the GINA B, contains a similar provision.  "The entire operation, navigation, and management of the Vessel shall be in the exclusive control and command of the Owners, their Master, Officers and Crew."  R. Doc. 42-11 at 2.  With the preceding provisions in mind, EnVen argues that it lacked the contractual power to control the activities which led to Alexander's injury.  R. Doc. 42-1 at 14.

**b.  Alexander's Memorandum in Opposition**

Alexander takes the position that EnVen is liable to Alexander because EnVen exercised operational control over its independent contractor, Lee.  Alexander argues that it was Captain Godwin's responsibility as captain to provide for safe conditions during the pipe transfer at issue,

4

and that Lee was "in charge of the [pipe transfer]" and "[bears] some responsibility for Godwin's admitted failures." R. Doc. 51 at 2.

Alexander's theory of operational control is drawn from Lee's testimony and the Master Service Agreement between Chapman and EnVen. Lee testified that he employed EnVen's standards when evaluating the performance of the repair project, and that Lee was expected to be familiar with EnVen's SEMS and safe work plan ("safety manual") before beginning work on the MP-277A. Alexander also notes that Lee was in daily contact with an EnVen production foreman, Troy Robery. R. Doc. 51 at 3. Lee admits that he was expected to transfer the daily Job Safety Analysis reports from the MP-277A to EnVen. R. Doc. 51 at 4. Additionally, Alexander characterizes language in EnVen's Master Service Agreement with Chapman as a contractual reservation of operational control over Lee. R. Doc. 51 at 7.

In sum, Alexander concludes that EnVen exercised operational control over Lee for three primary reasons: (1) the Master Service Agreement instructed Lee to follow EnVen company procedures and policies; (2) EnVen required Lee to become familiar with EnVen's safety rules and protocol; and (3) Troy Robery exercised control over Lee through daily phone calls. R. Doc. 51 at 7.

### III.   LAW AND ANALYSIS

#### a.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *See id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### b.  The Law of Principal and Independent Contractor Liability

Fixed platforms located on the Outer Continental Shelf in the Gulf of Mexico are governed by the Outer Continental Shelf Lands Act, 42 U.S.C. § 1331 (2012).  Under this Act, the rights of an injured worker are governed by "federal law, supplemented by the law of the adjacent state." *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969).  The negligence law of a state often supplements federal law in personal injury actions such as the one at bar.  *See, e.g.*, *Iglesias v. Chevron U.S.A., Inc.*, 656 F. Supp. 2d 598, 601 (E.D. La. Aug. 18, 2009).

In the Fifth Circuit, a principal is ordinarily not liable for the negligent acts of its independent contractors if Louisiana law applies.  *See Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 380 (5th Cir. 2001); *Iglesias*, 656 F. Supp. at 601; at *2; *Zeigler v. BP Am. Production Co.*, No. 05-4138, 2006 WL 2850163, at  (E.D. La. Oct. 4, 2006).  There are two exceptions to this general rule: "(1) the suit arises out of the ultrahazardous activities of its independent contractors; or (2) the principal retains operational control over the independent contractor's acts or expressly or impliedly authorizes those acts."  *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994) (internal citations omitted).  The operational control exception "requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal."  Actual control is also relevant to the operational control exception, but "[t]he supervision and control which is *actually* exercised by the principal is less significant" than the contractual reservation of the right to control by the principal.  *Ainsworth v. Shell Offshore Inc.*,

829 F.2d 548, 550–51 (5th Cir. 1987) (quoting *Hemphill v. State Farm Ins. Co.*, 472 So.2d 320 (La. App. 3d Cir. 1985).

    **c.  Discussion**

        i.   Applicable Law

The MP-277A platform is located on the Outer Continental Shelf of the Gulf of Mexico. The parties briefing suggests that both EnVen and Alexander agree that the law of Louisiana applies to the present action.  Presumably, the parties believe that Louisiana law applies because of the Outer Continental Shelf Lands Act ("OCSLA").  43 U.S.C. § 1331.  OCSLA commands that the rights of workers injured on platforms subject to OCSLA are governed by "federal law, supplemented by the law of the adjacent state."  Louisiana is the adjacent state in this matter.

However, the Court notes that the Complaint suggests that Alexander was aboard the GINA B at the time of the accident, and not aboard the fixed platform subject to OCLSA.  The GINA B was a vessel in navigable waters in the Gulf of Mexico at the time of the accident.  Thus, the general maritime law may be the substantive law applicable to this case.  *See* 46 USC § 30101; *see also Nettles v. Ensco Marine* 980 F.Supp. 848, 852 (E.D. La. Sep 12, 1997); 1 Schoenbaum, Admiralty & Maritime Law § 3-9 (5th ed. 2011).  However, the Court finds no appreciable difference between federal maritime law and the state of Louisiana on this point, and proceeds to rule based on the briefing presented by the parties.

        ii.   Summary Judgment

The summary judgment evidence does not support the imposition of liability against EnVen.  Under the two Master Service Agreements and the Master Time Charter Agreement, EnVen lacked the contractual authority to exert operational control over the activities of Shaw, Chapman, and Kevin Gros.  *See* R. Docs. 42-6 at 4 ("[EnVen] shall have no direction or control

of the details of the work, the Contractor, or its employees and agents except in the results obtained."); 42-9 at 5 (stating the same), 42-11 at 2 ("The entire operation, navigation, and management of the Vessel shall be in the exclusive control and command of the Owners, their Master, Officers and Crew.").  The absence of contractual operational control weighs heavily against the imposition of negligence liability.  *See Ainsworth*, 829 F.2d at 550–51.  And EnVen also lacked actual operational control, as EnVen failed to exert any direct control over its independent contractors that might have caused the accident.  R. Doc. 42-2 at 3.  Neither aspect of operational control presents a material fact, so Alexander's claim against EnVen fails.

At the time of the pipe-loading accident, the parties were operating under the two Master Service Agreements and the Master Time Charter Agreement.  R. Doc. 42-2 at 2.  No employee aboard the MP-277A platform or the GINA B operated outside of one of these three contractual agreements.  R. Doc. 42-2 at 2.  The language of the contracts unambiguously defines the relationships between EnVen and its independent contractors—Shaw, Marshall, and Kevin Gros— as principal/independent contractor relationships.  *See* R. Doc. 42-6 at 4 ("Contractor shall be an independent contractor . . . and shall [not] be deemed for any purpose to be the employee, agent, servant, or representative of [EnVen]."); R. Doc. 42-11 at 2 ("In the performance of the Time Charter, the Owners are deemed to be an independent contractor, the Charterers being concerned only with the results of the services performed.").  Therefore, EnVen can only be held liable if it falls into one of the two exceptions under Louisiana law for a principal's liability for the work of its independent contractors.  Alexander concedes that the repair work on the MP-277A platform was not ultrahazardous, R. Doc. 42-2 at 4, so the only plausible exception which could impose liability on EnVen concerns Enven's operational control over its independent contractors.

Operational control can be exerted through both contractual control and actual control. *Ainsworth*, 829 F.2d at 550–51.  Examining the operational control exception "first requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal."  *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).  If contractual control is absent, the court should proceed to an examination of actual operational control.  *Id.*

### iii. Contractual Control

Alexander raises no genuine issue of fact as to EnVen's lack of contractual control over the day-to-day repair operations aboard the MP-277A.  Both the Master Service Agreements and the Master Time Charter Agreements devolve all power to the independent contractors performing the work.  For example, EnVen's Master Service Agreement with Shaw states that "[EnVen] shall have no direction or control of the details of the work, [Shaw], or its employees and agents except in the results to be obtained."  R. Doc. 42-6 at 4.  The Master Time Charter Agreement with Kevin Gros contains similar language.  "The entire operation, navigation, and management of the Vessel shall be in the exclusive control and command of the Owners, their Master, Officers and Crew."  R. Doc. 42-11 at 2.  Alexander fails to distinguish this language from the Fifth Circuit's holding in *Fruge ex rel. Fruge v. Parker Drilling co.*, 337 F.3d 558, 564 (5th Cir. 2003).  In *Fruge*, the appellate court held that the principal lacked contractual control when the contract provided the principal with "no direction or control of . . . Personnel except in the results to be obtained"  *Id.*

Rather than directly addressing the clauses ceding EnVen's control, Alexander argues an issue of material fact exists because the Master Service Agreement and EnVen's safety manual send mixed messages regarding EnVen's control over Lee.  The Master Service Agreement provides that "[Chapman] shall comply and cause its employees and agents entering on Pisces

10

property in the performance of its work or in connection therewith to comply with all Pisces safety rules that may disclosed or known to [Shaw] . . . ."  R. Doc. 51-4 at 2.  Alexander neglects to mention that immediately prior to this language the Master Service Agreement provides that "[*Chapman*] *is responsible* for initiating, maintaining, and supervising all necessary safety precautions and programs in connection with the work conducted under [Chapman's] control."  R. Doc. 51-4 at 2 (emphasis added).  Additionally, Alexander notes that EnVen provided Lee with EnVen's safety manual.  The safety manual provides that "Consultants are responsible for enforcing all government regulations and EnVen Energy Ventures policies."  R. Doc. 51 at 5.

Louisiana precedent holds that conflicting provisions in a contract can demonstrate an issue of material fact as to operational control.  For instance, in *Denson*, the Louisiana Fourth Circuit reversed a grant of summary judgment on the grounds that "the contract contains clauses that are suggestive of [the principal] maintaining some aspects of control over the vessel."  *Denson v. Diamond Offshore Co.*, 2006-0568, p. 4 (La. App. 4 Cir. 3/28/07); 955 So. 2d 730, 733.  The principal in *Denson* retained extensive power over its independent contractor: the principal could (1) require the independent contractor to increase the independent contractor's personnel on site; (2) order the removal or replacement of personnel of the independent contractor; (3) require the independent contractor to perform services "under the direction and supervision" of the principal; (4) require the independent contractor to comply with all of the principal's instructions, including "safety instructions."  *Id.* at 733–34.  The *Denson* principal contractually reserved powers over day-to-day operations that were both numerous and meaningful.  These day-to-day operations were also relevant to the accident at issue: the independent contractor in *Denson* conducted independent lighting safety checks and was placed on twenty-four hour on-call status for the principal.  *Id.*  The *Denson* plaintiff alleged that he was injured in part due to lighting-related negligence.  *Id.*  Thus,

a principal may be held liable for the actions of its independent contractor even if it contractually cedes some of its powers to the independent contractor.

However, even when viewing the evidence in the light most favorable to Alexander and analogizing to *Denson*, the Court cannot find an issue of material fact regarding contractual control.  The *Denson* court found an issue of material fact where the undisputed facts presented numerous, potent provisions for controlling day-to-day operations, as well as safety activity by the independent contractor that was directly relevant to the accident in question.  *Id.* at 733–34.  In contrast, Chapman's contract with EnVen only provides that a contactor such as Lee should follow EnVen safety rules, and that the contractor was solely responsible for ensuring that those rules were followed.  *See* R. Doc. 51-4 at 2 ("[Chapman] is responsible for initiating, maintaining, and supervising all necessary safety precautions and programs in connection with the work conducted under [Chapman's] control.").  Further, Alexander provides no evidence to suggest that Lee's instructions to follow EnVen's safety rules had any effect on Alexander's accident or safety in general aboard the platform.  Alexander can only point to Lee's statement that Lee would order a JSA to be performed in the event that the Shaw crew failed to conduct a JSA as evidence of EnVen's day-to-day control over safety matters.  R. Doc. 51-3 at 22.  There is no indication that a JSA was not performed on the day in question.  Instead, Lee's deposition testimony confirms that he lacked authority over safety operations aboard the platform, and that any safety information Lee relayed to EnVen was incidental to Lee's general task of updating EnVen on the daily work scope, i.e., "[W]hat the crew, being Shaw, is going to be performing that day so [EnVen] can have an idea, you know, what's going on, you know, on [its] platform."  R. Doc. 51-3 at 26.

Precedent supports a finding that neither the safety manual nor the Master Service Agreement provision calling for Chapman to follow EnVen safety protocol create a genuine issue

of material fact.  For example, with regards to the safety manual provided to Lee, the Fifth Circuit
has interpreted Louisiana law to hold that a court determining contractual control should grant the
contract significantly more weight than any ancillary materials.  *See LeJeune v. Shell Oil Co.*, 950
F.2d 267, 269 (5th Cir. 1992) (internal citations omitted) ("We have frequently noted that, under
Louisiana law, the relationship between the principal and the independent contractor is in large
measure determined by the contract itself.").  The Fifth Circuit in *LeJeune* also found that a
provision in an independent contractor's contract which ordered the contractor to "strictly enforce
all rules and regulations set forth in [principal's] 'Safety Guidelines and Requirements for
Contractors'" did not create an issue of material fact as to contractual control.  *Id.* at 269–70.  There
is no meaningful distinction between the provision which the Fifth Circuit found inconsequential
in *LeJeune* and the provision suggesting EnVen had control over Chapman in the Master Service
Agreement.  The Court looks instead to the Master Service Agreement's clear, unambiguous
statement of Enven's lack of control.  "[EnVen] shall have no direction or control of the details of
the work, the Contractor, or its employees and agents except in the results obtained." 42-9 at 5.
Therefore, because the Court finds *Denson* distinguishable and *LeJeune* controlling, Alexander
fails to present an issue of material fact as to EnVen's contractual control over Lee.  The first
mechanism for proving operational control is closed to Alexander.

      iv.  Actual Control

    The Court must now determine whether EnVen exercised actual operational control over
the work being performed at the time of Alexander's accident.  Alexander contends that Lee was
EnVen's "eyes" on the MP-277A, R. Doc. 51-3 at 16, or, in other words, that Lee was a company
man with power over safety protocol.  Lee admits that he spoke to EnVen's production foreman
every morning after Lee's participation in the daily safety meeting for the repair team.  R. Doc.

51-3 at 97.  EnVen also expected Lee to be familiar with EnVen's safety procedures, and Lee

stated that he would have instructed the crew to perform a pre-work Job Safety Analysis if a Job

Safety Analysis were not performed.  R. Doc. 51-3 at 22.  Alexander also notes that EnVen exerted

direct control over the jobsite after the accident by making the decision to remove Alexander from

the platform after the accident.  R. Doc. 51 at 8.

       Despite this evidence, Alexander cannot satisfy the Fifth Circuit's test for demonstrating

actual operational control.

> [T]he fact that a principal like Texaco reserves the right to monitor
> its contractor's performance and stations a "company man" on the
> platform who monitors the contractor's activities, has the right to
> make safety recommendations to the contractor, and is obligated to
> report continuing unsafe work practices or conditions to his
> (Texaco) superiors, does not mean that the principal controls the
> methods or details of his contractor's work.  In short, absent an
> express or implied order to the contractor to engage in an unsafe
> work practice leading to an injury, a principal like Texaco cannot be
> liable under the operational control exception.

*Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).  The existence of a "company man"

who follows the principal's safety protocol does not create a question of material fact in the Fifth

Circuit.  *Id.*  The test is far more demanding; courts finding actual operational control require a

direct link between the independent contractor and the safety error which led to the injury.  *See*

*e.g.*, *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329–30 (5th Cir. 1987) (finding evidence

of actual operational control when a "company man" expressly told a driller to engage in the unsafe

practice of not washing down the rig floor); *Denson*, 955 So. 2d at 733 (finding an issue of material

fact as to actual operational control when a "company man" checked the lighting every day and

reported lighting problems in a case involving allegedly improper lighting).  Alexander cannot

point to an express or implied order by Lee or Lee's EnVen contact, Troy Robery, that could have

led to Alexander's injury.  EnVen therefore cannot be held liable on the grounds of Enven's actual

operational control over the work being performed at the time of Alexander's injury.

**IV.      CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that EnVen's Motion for Summary

Judgment, R. Doc. 42, is hereby **GRANTED**.

The Court takes no action regarding Alexander's request in his Opposition for leave to

amend the Complaint.  This issue was not presented by motion as required by the local rules.

*See* L.R. 7.1.


New Orleans, Louisiana, this 4th day of February, 2016.

UNITED STATES DISTRICT JUDGE